UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FELIPE MULERO | : | |
|     Plaintiff, | : | |
| v. | : | |
| | : | |
| CITY OF BRIDGEPORT, BOARD OF | : | Civil Nos. 3:07-CV-1206 (PCD) |
| EDUCATION and ONE CONSOLIDATED | : | 3:08-CV-1574 (PCD) |
| SCHOOL DISTRICT OF NEW BRITAIN, | : | |
| CONNECTICUT, | : | |
|     Defendants. | : | |

**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Felipe Mulero brings these actions alleging discrimination by his former employers in violation of federal and Connecticut law.

He alleges disparate treatment on account of disability, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq. ("ADA") and the Connecticut Fair Employment Practices Act, CONN. GEN. STAT. §§ 46a-60, et seq. ("CFEPA") against Defendant City of Bridgeport, Board of Education ("Board").  Plaintiff also brings a breach of contract claim against the Board.

Plaintiff alleges disparate treatment on account of sex and disability and retaliation for prior complaints, in violation of the ADA, CFEPA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. against Defendant One Consolidated School District of New Britain, Connecticut ("District").

On April 8, 2010 the Court consolidated the cases against the two Defendants. Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment as to all claims.  For the reasons stated herein, Defendants' motions for summary

1

judgment [Doc. Nos. **62, 74**] are **granted.**

I.      **Standard of Review**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  However, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).  The moving party bears the burden of establishing that summary judgment is appropriate. Anderson, 477 U.S. at 225.  "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.

1980). Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

"[The Second Circuit has] repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) (citing Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)). Where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, so that "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Gallo, 22 F.3d at 1224.

## II. City of Bridgeport, Board of Education

### A. Background

This employment discrimination action stems from Plaintiff's suspension by and later

resignation from employment with the City of Bridgeport, Board of Education and the Connecticut Department of Education's subsequent denial of his application for teacher certification. Plaintiff filed his initial complaint after the statute of limitations had run, but this Court held that the statute had been equitably tolled and denied the Board's motion to dismiss. Mulero v. Bridgeport Bd. of Educ., No. 3:07-CV-1206 (PCD), 2008 WL 2185928, at *4 (D. Conn. 2008). Plaintiff alleges violations of the ADA and CFEPA and breach of contract.

The Board hired Plaintiff as a bilingual teacher at Central High School in August 2002. (Mulero Aff. ¶ 4, Dec. 22, 2009.) At the time, Plaintiff had a temporary 90 day certificate as a bilingual educator. (Id. ¶ 5.) In the fall of 2002, the Board received numerous complaints about Plaintiff's behavior. (Pannozzo Dep. at 44.) Allegations against Plaintiff included sexual harassment of a student and unprofessional conduct, including reading the newspaper during a meeting with an assistant principal, loitering around the student health clinic and shaving in the school lavatory. (Id. 54-55.) Plaintiff denies these allegations, admitting only to shaving on one occasion. (Mulero Aff. ¶ 11, Dec. 22, 2009.) On November 27, 2002, Plaintiff was suspended from his teaching duties pending investigation of the accusations. (Pannozzo Letter, Def.'s Ex. D at 1.) Fearing that an investigation would sully his reputation regardless of the validity of the accusations, Plaintiff voluntarily resigned on January 24, 2003. (Mulero Aff. ¶ 15, Dec. 22, 2009.) Plaintiff and the Board recorded his resignation agreement in a Memorandum of Understanding ("MOU"). The MOU stated that "[a]ny and all documents relating to Mr. Mulero's performance at Central High School as a substitute teacher in the bilingual program shall be expunged from his personnel file." (MOU, Def.'s Ex. F ¶ 2.)

Plaintiff alleges that his suspension and the Board's acceptance of his resignation

constituted discrimination on the basis of disability. Plaintiff suffers from anxiety disorder and depression. (Mulero Aff. ¶ 7, Dec. 22, 2009.) His mental illness dates to at least 1997. (Id.) The record does not indicate that Plaintiff ever informed any representative of the Board of his mental illness and the Board's director of human resources denies any knowledge of the disability. (Pannozzo Dep. at 99-100.) In his deposition, Plaintiff repeatedly refused to answer affirmatively when asked if he had ever informed his employer of his disability. (Mulero Dep. at 95-96.)

Plaintiff later applied for teacher certification with the Department of Education ("Department"). In order to evaluate his application, the Department subpoenaed his employment records from the Board. (Subpoena, Def.'s Ex. H.) The Board complied with the subpoena and supplied the documents, which had not been destroyed. (Pannozzo Dep. at 90.)

The Department denied Plaintiff's application on December 14, 2005. (Pugliese Letter, Def.'s Ex. I at 1.) The Department cited Plaintiff's repeated misrepresentations as a cause for the denial. Plaintiff was convicted of a motor vehicle offense in 1997 which he did not disclose on prior applications for certification. (Id.) In 2001, the Connecticut Technical High School System informed the Department of the conviction and the Department warned Plaintiff that while his failure to report it did not disqualify him from being certified, future misrepresentations could. (Id.) Plaintiff subsequently committed two separate acts of misrepresentation. He was convicted of forgery in the second degree, a crime of misrepresentation, on November 17, 2003. (Id.) He also did not report Rhode Island's 2002 denial of his certification request on the 2005 Connecticut application. (Id.)

In its denial letter, the Department also cited information it received from the Connecticut

Technical High School System, Central Connecticut State University and the Board which "verifie[d] a pattern of inappropriate behavior towards students, staff, and the profession." (Id.) The chief of the Department's certification bureau denies that the documentation from the Board was a causal factor in the decision not to certify Plaintiff. (Pugliese Aff. ¶¶ 10-11.) Plaintiff alleges, however, that the Board breached the MOU when it complied with the subpoena and the breach caused the Department's denial.

### B.   Claims under the Americans with Disabilities Act and Connecticut Fair Employment Practices Act

Plaintiff seeks relief under both the ADA and CFEPA. Connecticut courts follow federal precedent regarding employment discrimination claims. See, e.g., Bernier v. Moskowitz, 117 F. Supp. 2d 126, 129 (D. Conn. 1999) (citing Levy v. Comm'n on Human Rights & Opportunities, 671 A.2d 349, 355 (Conn. 1996)). Therefore, Plaintiff's ADA and CFEPA claims are subject to the same analysis.

Disability discrimination claims are analyzed according to the three step burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519, 524, (1993); see, e.g., Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48 (2d Cir. 2002) (applying McDonnell Douglas to ADA claims). Under the McDonnell Douglas framework, the plaintiff has the initial burden of showing a *prima facie* case of discrimination. Id. at 49. Upon the establishment of the *prima facie* case, the defendant faces a presumption of discrimination, which it can rebut by demonstrating a legitimate nondiscriminatory reason for the challenged action. Roge v. NYP Holdings, Inc., 257 F.3d 164,

6

168 (2d Cir. 2001). The burden then returns to the plaintiff, who must show that the defendant's proffered reason is actually pretext for discrimination. Id. (quoting Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 143 (2000)).

A *prima facie* case of discrimination has four elements. The plaintiff must show that: 1) his employer is subject to the ADA, 2) he is disabled within the meaning of the ADA, 3) he is otherwise qualified to perform the essential functions of the job and 4) he suffered an adverse employment action because of his disability. Alexander v. DiDomenico, 324 F. App'x 93, 95 (2d Cir. 2009) (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)). The burden on the plaintiff in establishing the *prima facie* case is "minimal." Ward v. Univ. of Conn., No. 3:05-CV-804 (RNC), 2008 WL 4453423, at *3 (D. Conn. Sept. 30, 2008) (citing James v. New York Racing Ass'n, 233 F.3d 149, 153 (2d Cir. 2000)).

Plaintiff fails to meet the minimal burden required to establish a *prima facie* case under the McDonnell Douglas framework. He is unable to produce any factual support for the fourth required element, that he suffered an adverse employment action *because* of his disability. In order to meet this requirement, a plaintiff must at the very least show that his employer had notice of his disability. See Rodal v. Anesthesia Group of Onondaga, 369 F.3d 113, 118 (2d Cir. 2004) (listing notice to employer as a requirement of a *prima facie* ADA case). During his deposition, Plaintiff repeatedly refused to answer affirmatively when asked if he had ever informed any of the Board's employees of his disability or ever complained of discrimination. (Mulero Dep. at 95-96.) The only factual support Plaintiff offers for his claim is an affidavit written after the deposition. A party cannot create a genuine issue of material fact by an affidavit contradicting his own prior testimony in a deposition. Hayes, 84 F.3d at 619 (citing Perma

Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)).[1]  Without any basis for establishing that he suffered an adverse employment action because of his disability, Plaintiff cannot show a *prima facie* case.  Summary judgment is therefore **granted** as to counts I and II.

### C.     Breach of Contract

In order to bring a successful breach of contract claim, a plaintiff "must establish: (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the opposing party and (4) damages" directly and proximately caused by the defendant's breach. Johnson v. Sears Roebuck & Co., No. 3:05-CV-139 (JCH), 2007 WL 2491897, at *3 (D. Conn. Aug. 29, 2007) (citing Warning Lights & Scaffold Serv., Inc. v. O & G Indus., Inc., 925 A.2d 359, 362 (Conn. App. 2007); McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc., 890 A.2d 140, 153 (Conn. App. 2006)) (internal quotations omitted).  Although the issue of causation and damages is generally one for trial, if a reasonable factfinder can reach only one conclusion summary judgment is proper.  Pediatric Occup. Therapy Serv., Inc. v. Town of Wilton, No. X06CV020174833S, 2004 WL 886394, at *10 (Conn. Super. Apr. 7, 2004) (citing Abrahams v. Young & Rubicon, Inc., 692 A.2d 709, 712 (Conn. 1997)).

Plaintiff claims that the Board's compliance with the subpoena breached the MOU's provision on expungement of files.  Plaintiff argues that the Board's alleged breach of the MOU directly resulted in the Department's denial of his certification.  Although Plaintiff's application to be certified was denied after the Department received the files from the Board, based on the

---

[1] Even if Plaintiff were permitted to create a genuine issue of material fact in this manner, the facts alleged in the affidavit would still fall short of establishing that he suffered an adverse employment action because of his disability.  Plaintiff's affidavit alleges that school administrators were aware of his disability because he declined several offers of coffee, telling those present that he "could not drink coffee as it would affect [his] anxiety condition." (Mulero Aff. ¶ 8, Dec. 25, 2009.)  No "rational trier of fact," Matsushita, 475 U.S. at 587, could find that Plaintiff's alleged refusal of coffee in front of colleagues constituted notice to the Board that he was disabled.

factual record as a whole no "rational trier of fact," Matsushita, 495 U.S. at 587, could find that the Board caused Plaintiff's injury by providing files to the Department.

Although Plaintiff may have been reasonably upset that the Board shared the documents with the Department, the letter denying his application for certification includes several independently sufficient grounds for denial. Plaintiff engaged in two separate acts of misrepresentation following the Department's warning that misrepresentation could result in his certification being denied. (Pugliese Letter, Def.'s Ex. I at 1.) Plaintiff was convicted of forgery, a felony of misrepresentation, and he did not report his denial of certification in Rhode Island on his Connecticut application. (Id.)

The letter notes that the Department received documentation from the Board. However, it also cites to documents received from the Connecticut Technical High School System and Central Connecticut State University in the same paragraph, concluding that all the documents "verfie[d] a pattern of inappropriate behavior." (Id.) Moreover, the chief of the certification bureau stated that the Bridgeport files were superfluous to the decision to deny Plaintiff's application. (Pugliese Aff. ¶¶ 10-11.) Although all ambiguities are resolved against the moving party, Diebold, 369 U.S. at 655, there is no ambiguity here. Plaintiff offers no evidence to refute the Board's well documented argument that the Department would have denied Plaintiff's application even without the subpoenaed records.

Furthermore, even if the Court were to assume that the disclosure of his record at Central High School alone caused the denial, Plaintiff would still be unable to prove a breach of contract. Connecticut law requires boards of education to submit information to the Department regarding current and former employees applying for certification. CONN. AGENCIES REGS. § 10-145d-

9

407(d). Boards are required, if the employment was not "successful," to report "the reasons as to why the employment was not successful." Id. Thus, even if the Board had destroyed the documents under the MOU it would still be required to report Plaintiff's behavior to the Department.[2] Without any showing that he suffered damages as a result of the Board's alleged violation of the MOU, Plaintiff cannot bring a claim for Breach of Contract. Therefore, the Board's motion for summary judgment is **granted** as to count III**.**

### III.     One Consolidated School District of New Britain, Connecticut

Plaintiff also brings an action against the One Consolidated School District of New Britain, Connecticut, claiming discrimination on the basis of sex and disability.

#### A.     Background

Plaintiff was employed in various Connecticut school districts beginning in 1992. (Mulero Aff. ¶ 3, Feb. 25, 2010.) Specifically, the New Britain District ("District") hired him in 1999 to serve as a bilingual educator. In March 2001, after properly exhausting administrative remedies, Plaintiff brought suit against the District, alleging discrimination based on sex and national origin and retaliation for prior complaints. (Mulero Aff. ¶ 10, Feb. 25, 2010.) That complaint initiated the first round of litigation between the parties.

The initial scheduling order for the prior litigation listed July 31, 2002 as the final date for amending pleadings. (Def.'s Resp. to Pl.'s Opp. at 5) However, this was not a binding deadline, as Plaintiff was able to amend his complaint twice, on May 23 and May 27, 2002. (Id. at 14.) Thereafter, the litigation did not progress smoothly. Plaintiff did not provide the District

---

[2] Moreover, for such a reporting policy to be effective, boards of education must keep documents on file, as they might be required to report to the Department years after an employee has left–a contract requiring the destruction of such documents would have been contrary to the public policy of the State.

with the discovery it requested, and after granting multiple motions to compel discovery, the court issued an order on December 6, 2006: Plaintiff was to submit to discovery by December 15, or a default judgment would be entered in favor of the District. (Default Judgment, Def.'s Ex. 6.) Plaintiff did not comply with the order and the court entered default judgment on December 21, 2006. (Id.) On July 3, 2007 and July 31, 2009, Plaintiff filed motions to reopen the prior litigation. The motions were denied on February 27, 2008 and August 18, 2009, respectively. (Pl.'s Rule 56(a)(2) Stmt. ¶¶ 8-9, 11).

During the prior litigation, Plaintiff's status as a certified educator was in flux. Plaintiff applied to the Department of Education for several levels of certification, but his applications were denied on December 14, 2005. (Pugliese Letter, Def.'s Ex. C at 1.) On February 28, 2006, his existing certification as a vocational educator expired. (Mulero Aff. ¶ 3, June 11, 2010.)[3] Plaintiff has not been re-certified since that date. Also concurrent with the prior litigation, Plaintiff was convicted of forgery in the second degree, a felony. See CONN. GEN. STAT. § 53a-139. His conviction was affirmed on September 20, 2005. State v. Mulero, 881 A.2d 1039 (Conn. App. 2005). Plaintiff served his sentence from June 2006 to June 2007. (Mulero Aff. ¶ 13, Feb. 25, 2010.)

Following his release from prison, Plaintiff applied for jobs with the District on several occasions. The District began using an online application system in July 2007. (Stacy Dep., Def.'s Ex. A at 2.) Using this system, Plaintiff applied for jobs at least four times: on July 31,

---

[3] Plaintiff's affidavit further states that he "voluntarily requested that [his] certification be canceled on April 26, 2004." (Id.) It is unclear from the record whether his certification was actually canceled at this time, or whether it simply expired in February 2006. The actual date, however, is immaterial to the Court's decision, as both dates are within the period controlled by the prior litigation.

11

2007, July 10, 2009, August 8, 2009 and December 28, 2009. (Applications, Pl.'s Ex. 7 at 35, 65, 86, 98.)  Plaintiff applied for teaching positions, which require certification, and non-teaching positions, which do not. (Id.)  Specifically, the positions ranged from associate principal to breakfast/lunch aide. (Id.)  Plaintiff was never interviewed for any of the positions and the District contacted him only to inform him of his rejection. (Mulero Aff. ¶ 16, Feb. 25, 2010.)

On January 22, 2008, while his motion to reopen the prior litigation was still pending, Plaintiff filed a new complaint with the Commission on Human Rights and Opportunities ("CHRO"), once again alleging sex and disability discrimination on the part of the District. (CHRO Compl., Def.'s Ex. A at 4.)  The complaint focused solely on teaching, viz. a position as a bilingual educator at Pulaski Middle School and did not mention any of the other jobs for which Plaintiff had applied. (Id. at 5-6.)  The CHRO conducted a Merit Assessment Review ("MAR"), found no reasonable possibility that the claim was meritorious and released jurisdiction. (MAR, Def.'s Ex. B at 3-5.)  On October 16, 2008, Plaintiff filed the present complaint using the same form as his complaint in the prior litigation, but updated the dates and made minor changes to the allegations.  (Compl. ¶¶ 1, 7, 9, 11.)  To wit, he alleges that the District "in Kahoots [sic] WITH STATE OF CONN. DEPT. OF ED." violated Title VII, the ADA and CFEPA by discriminating against him on the grounds of sex and disability and in retaliation for prior complaints he had filed. (Id.)  The District denies the accusations, claiming that Plaintiff was not hired because his felony conviction and lack of certification disqualified him from consideration for the positions for which he applied.  The District has moved for summary judgment on all counts.

    **B.**    **Preclusion**

Plaintiff's complaint alleges discrimination under Title VII, the ADA and CFEPA from December 1999 to the present. However, the default judgment in the prior litigation has preclusive effect on his claims prior to December 21, 2006.

Plaintiff correctly asserts that under a well established rule, the default judgment does not have issue preclusive effect on the present litigation because the issues were not actually litigated. See In re Alder, Coleman Cleaning Corp., 205 F. App'x 856, 857 (2d Cir. 2006). However, the opposite is true for claim preclusion, in which case it "is well established that a default judgment is deemed as conclusive an adjudication of the merits of an action as a contested judgment." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 160 (2d Cir. 2005) (citations omitted). Claim preclusion applies to any claims which *could* have been part of the initial litigation, even claims not actually brought. See King v. Fox, 428 F.3d 121, 131 (2d Cir. 2005).

There is no dispute that the subject matter of the current claims could have been part of the prior litigation between these parties. Plaintiff contends, however, that the prior litigation only precludes claims stemming from events prior to the original deadline to amend pleadings, July 31, 2002. The record indicates that in reality there was no July 31 deadline. Moreover, Plaintiff was permitted to file amended complaints on May 23 and May 27, 2003 and was never prevented from making any further filings. (Def.'s Resp. to Pl.'s Opp. at 14). Because claim preclusion applies to any claims which should have properly been brought in the previous litigation, the prior litigation has preclusive effect on any of Plaintiff's claims which predate the judgment.

**C.     Exhaustion**

The case at bar does not entirely overlap with the prior litigation, as Plaintiff has alleged ongoing discrimination since the default judgment.  Plaintiff also brings employment discrimination claims under Title VII,  the ADA and CFEPA stemming from more recent events..

Employment discrimination claims have an exhaustion requirement.  Before a plaintiff can bring a discrimination claim in court he must file an administrative complaint. 42 U.S.C. § 2000e-5; CONN. GEN. STAT. § 46a-100.  Thus, the scope of this litigation is limited not only by the preclusive effect of the default judgment, but also by the extent to which Plaintiff has exhausted administrative remedies for his post 2006 claims.

Plaintiff filed a complaint with the CHRO in January 2008.  In the complaint, he alleged discriminatory hiring practices for the District's bilingual education teacher on the basis of sex and disability and retaliation for previous complaints. (CHRO Compl., Def.'s Ex. A at 5-6.)  The CHRO complaint only alleges discrimination with regard to this teaching position–it says nothing about discriminatory  hiring for the other positions for which Plaintiff applied.  Thus, Plaintiff has satisfied the  exhaustion requirement for his Title VII, ADA and CFEPA claims of discriminatory hiring for teaching positions only.  The allegations of discrimination in the hiring of teachers is subject to McDonnell Douglas analysis discussed supra, but Plaintiff's failure to exhaust administrative remedies for the other claims bar this Court from considering them.

The first step of the McDonnell Douglas analysis is determining whether the plaintiff has made a *prima facie* case of discrimination. Reg'l Econ. Cmty. Action Program, 294 F.3d at 48.  The burden on the plaintiff is "minimal." Ward, 2008 WL 4453423, at *3.  Title VII and ADA *prima facie* cases each require four elements.  A Title VII plaintiff "must show that: 1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse

14

employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Cordell v. Verizon Comm., Inc., 331 F. App'x 56, 58 (2d Cir. 2008) (quotation and citation omitted).  An ADA plaintiff must show that: 1) his employer is subject to the ADA, 2) he is disabled within the meaning of the ADA, 3) he is otherwise qualified to perform the essential functions of the job and 4) he suffered an adverse employment action because of his disability. DiDomenico, 324 F. App'x at 95.  Thus, both statutes share the requirement that the plaintiff be qualified for the job in question.

Although the burden in making a *prima facie* claim is minimal, Plaintiff cannot show he is qualified, and thus fails to satisfy the first McDonnell Douglas step.  To be qualified for a position as a teacher, an applicant must be certified by the Department of Education. CONN. GEN. STAT. § 10-145.  Although Plaintiff has produced documentation of his certification in earlier years, nothing in the record shows that he was certified in the relevant period.  Plaintiff "was certified as a vocational educator [from] March 1, 2001 to February 28, 2006." (Mulero Aff. ¶ 3, June 11, 2010.)[4]  As discussed supra, the relevant timeframe for the present case began in December 2006.  Therefore, Plaintiff's certification as a vocational educator was never valid during the relevant period.  Even under the summary judgment standard, in which all ambiguities are resolved in Plaintiff's favor, there is no genuine issue of material fact regarding his qualification to hold a teaching position during the period relevant to this case.  Summary judgment is **granted** as to counts I and II.

E.   **Spoliation**

---

[4] Plaintiff's applications for certification in other educational disciplines were denied on December 14, 2005. (Pugliese Letter, Def.'s Ex. C at 1.)

Plaintiff also asserts that the District should be sanctioned for spoliation because it "purged" his pre-2007 job applications from its files. (Pl. Opp. at 8.) A party has an obligation to preserve evidence "when the party has notice that the evidence is relevant to the litigation or when a party should have known that the evidence would be relevant to future litigation." Fujitsu, Ltd. v. Fed. Exp. Corp. 247 F.3d 423, 436 (2d Cir. 2001) (citation omitted). Plaintiff argues that the District's decision not to preserve his applications violates this principle because the parties have been in litigation "non-stop since 2002." (Pl. Opp. at 8.) An examination of the history of the litigation, however, reveals that Plaintiff's claim of spoliation has no basis.

Plaintiff refers to "non-stop" litigation beginning in 2002. The prior litigation did begin in March of that year, but it concluded in December 2006 with the default judgment. Plaintiff filed a motion to reopen the case in July 2007, seven months after the default judgment was entered and three months after the District stopped retaining applications. (Stacy Dep., Def.'s Ex. A at 2.) Plaintiff then filed the present complaint in October 2008, twenty-two months after the default judgment. The litigation cannot be construed as "non-stop" when in fact a final judgment was entered *before* the alleged spoliation occurred and long before the present complaint was filed.[5] Plaintiff was incarcerated during the four month period from the default judgment to the alleged purge. (Mulero Aff. ¶ 13, Feb. 25, 2010.) Although Plaintiff may have considered himself to be in "non-stop" litigation with the District, there is no reasonable argument that the District should have known that the evidence would have been relevant to future litigation. Plaintiff was in prison, not filling out job applications that would lead to future litigation. Thus,

---

[5]Moreover, as discussed supra, Plaintiff is precluded from bringing claims which predate the default judgment, so it is not clear that the old applications would even be relevant.

the District was not in a position where it was required to preserve evidence. No spoliation sanctions are necessary.

**IV. Conclusion**

For the reasons stated herein, Defendants' motions for summary judgment [Doc. Nos. **62, 74**] are **granted.**

SO ORDERED.

Dated at New Haven, Connecticut, June  22 , 2010.

_____/s/_____
Peter C. Dorsey, U.S.D.J.